Nielsen, the next case is American Signature v. United States When you're ready, Mr. Pardoe. Thank you. Good afternoon. Your Honors, it's our belief that the CIT opinion below reflects a misunderstanding of the claim that ASI brought and the nature of the claim itself. And in order to fully appreciate the claim, it's very critical to look at the timing in which ASI requested its relief and the reasons which ASI could not have requested that relief earlier. ASI requested instructions from the Department of Commerce to Customs at the time of liquidation in order to prevent any improper assessment of duties at an erroneous rate. It made this request after it was known that the entries were going to be subject to the automatic assessment provision. Most importantly- Isn't that known kind of automatically when you don't have an administrative review? It's going to go under the entry rate? Ordinarily, that's true, Your Honor. However, in this particular instance, what occurred was that both the- There was reconsideration. The rates were adjusted. And each time that happened, there was an effective date supplied. So you were again on notice that the effective date applies and before that effective date, you're going on the entry rate, right? Well, we're talking about two different issues here, Your Honor. All right. Please help me out. The automatic assessment provision is a provision under which a company's entries are automatically assessed if there is no request for an administrative review. I understand. In this particular instance, initially, an administrative review was requested not only by Dorbest, which is ASI's exporter supplier, but by the U.S. industry itself. But then you withdrew those requests. Yes. The parties withdrew them, precisely. However, American Signature, who has brought this case, was unaware of the fact that these entries would be subject to the automatic assessment until after- Well, you would have requested yourself, wouldn't you, if you wanted an administrative review? Otherwise, you're putting yourself in jeopardy of exactly what happened. Others withdraw their requests, and you're left with an assumption that was not, in fact, a part of the record. Well, Your Honor, this is an argument that the government has made, however- Well, it's not an argument. It's the kind of reality. You didn't make a request for an administrative review. There's none that remains on the record. Therefore, you have to expect the entry rate or the effective rates that came in as the entry rate was revised. Well, Your Honor- Is there any way- Can you give me any reason why that wouldn't be your complete expectation under the laws that exist? Certainly, Your Honor, because of the request that we made to Congress, that there is a duty deposits made as a result of clerical errors. Now, with respect to any issues pertaining to the dumping law, Customs has informally adopted a policy in which they have said, we will only make this refund if we are given instructions, specific instructions by the Department of Commerce. The Department of Commerce has never taken it upon itself to enunciate a specific policy when they will actually issue these instructions, but they have acknowledged the fact that they do have this authority. Once American Signature realized it was in this position, basically at catch-22, where it now realized there were entries that were clearly subject to deposit rates that all parties understood and acknowledged were erroneous, and the automatic assessment provision had now come into effect, American Signature took the only avenue of relief that was available to it. It went to the Department of Commerce and said, under these circumstances, we feel it is appropriate for you to issue instructions to Customs so that they may grant us our relief pursuant to 1528-4. Now, most significantly, as we put in our request at the time to the Department of Commerce, they previously acknowledged that this was specifically one of the instances in which they felt it could be appropriate to issue such instructions to Customs. However, in our instance, inexplicably, they decided to do nothing and merely issued the assessment instructions. Why, can you tell me again, why is it that ASI didn't file a request during the administrative review period? Well, Your Honor, the... Because Commerce, in the response to 76, said, you know, the time to get overpayments back are during the administrative review process, and why didn't your client file something during that time? There are several reasons, Your Honor. Most importantly, Congress and the statute never envisioned an administrative review to be a vehicle in order to correct clerical errors or the erroneous deposit rates as a consequence of clerical errors. But they clearly envisioned it to be a time period for recouping overpayments made with regard to error, because the preliminary determination is determined to be an error. The final determination comes along, which is correct. And so clearly, it's not a leap to say that it was envisioned to take care of repayment of erroneous payment. Well, Your Honor, our position, and I think the position of the statute is that the purpose of an administrative review is to recalculate the margins themselves. In this instance, American Signature had absolutely no objections to the margins as calculated. Their only position was we would like our entries to be assessed duties based on what was determined to be the final rates as opposed to the erroneous rates. I do understand that that's something you can do in an administrative review, but didn't Commerce explicitly tell you in that Federal Register site where they responded to 76 tell the world that to the extent you want to seek retroactive overpayments, an administrative review is the appropriate place to do that? Well, Didn't they tell everybody that? Even if administrative reviews are often used in this other way to challenge these other things, didn't they tell you that would be the appropriate place to challenge this as well? Your Honor, our response to that would be twofold. First, there is a very significant distinction between the request that was made during the investigation by Fairmont or Sunrise that Commerce responded to in their comment 76. And that is, at the time, Sunrise or Fairmont was requesting an immediate refund of deposits. And this returns to my original point. What's very critical to keep in mind and what we believe the trial court misunderstood is the timing and the difference between the position that American Signature was in and the position which Fairmont was in when it made its claim. There is a large difference between a deposit and an actual assessment rate because the statute in this court has said assessment rates by necessity must be as accurate as possible. Deposits are merely estimated cash deposits. So are you saying by statute, despite the fact that Commerce told everyone that the appropriate time to pursue the overpayment would be the administrative review, are you saying by statute that is not a proper thing to pursue in an administrative review period? Our position, Your Honor, first is that the claim made during the investigation by Fairmont and Sunrise is distinct from the claim that American Signature subsequently made. The reason for that is, first off, because at the time that Fairmont was making its claim, it was merely requesting— I do understand your distinction, but I guess I'm trying to get—is there some reason you couldn't have done this during the administrative review? I mean, Commerce clearly indicated the time to seek these kinds of overpayments, even if it's not the exact identical one you're pursuing, is administrative review time, and you didn't file. And I guess I'm just wondering why. Look, I don't have a complete and utter mastery of all of the law in this field, and so I'm wondering, is there something I'm missing that would have prevented you from filing? Well, again, Your Honor, to begin with, as a legal matter, putting aside the statements that the Department of Commerce made in its issues and decisions memo, as a legal matter, administrative reviews were never envisioned to be a vehicle to correct for clerical errors. You've told us that several times. Let me ask you a different question. We now know you didn't file for an administrative review. In that setting, isn't the district judge correct here that the true nature of your claim becomes a claim seeking to challenge the prospective application of the effective dates? We would disagree, Your Honor. Without the administrative review, you'd like to say, well, we want to go back to the administrative review period and have a chance to raise things we didn't raise. That being gone, isn't the district judge correct? Again, Your Honor, we would have to respectfully disagree. And the reason for this is because, as stated in American Signature's request to Commerce, there is a provision in the statute for the refund of excess deposits prior to liquidation. The Commerce Department itself has stated that one of the instances in which it is appropriate for them to issue these deposits is precisely the situation that American Signature found itself, in which it is acknowledged by all parties that there are erroneous deposits on entries that are now subject to an automatic assessment. So American Signature was merely attempting to avail itself of a remedy that the Department of Commerce had previously acknowledged exists. And that was in no way a challenge of the underlying administrative determination. We keep circling around this issue, trying to figure out why, in your brief, you make the argument you could not have filed in a routine administrative review process to solve this problem because. Isn't that what you say in your brief? You could not have used the administrative review process because. What is the because? Why couldn't you have done this in the normal course, which is what both Judge Moore and Judge Rader have been asking in various ways. Your Honor, the administrative review process, as a consequence of. We understand it's not designed for this, but tell me why you couldn't have used it. As a practical matter, American Signature is merely an importer. It is not the respondent. American Signature, this would in essence be a situation of the tail attempting to wag the dog. American Signature, if it requested a review and attempted to force Dorbest, its exporter-producer, into undergoing a review, a review which takes a year to two years to be completed, has absolutely no guarantee that Dorbest is going to cooperate. And as a consequence of pursuing that avenue, it may end up with an even higher rate. The purpose, again, of the review is to recalculate the margins. American Signature had no issue with the margins as calculated. Its concern was that its entries were going to be liquidated at rates that were already determined and acknowledged to be erroneous. You want to save the rest of your time, Espardo. Thank you. Mr. Dierburg? May it please the Court. This is ministerial. Why wouldn't there be a correction? Your Honor, it was. Actually, it stems from a ministerial error allegation. And I think it's important to note that there was not one opportunity where ASI missed the boat. They missed the boat twice. And so to go further into the question. Why don't you take care of it? This was your ministerial mistake. Why don't you take care of it? Instead of holding parties to all the technicalities of the statute and making sure everybody files at the proper time. You had some parties filing for administrative reviews. Apparently, they relied on that. And then without their knowledge, it's withdrawn. Why don't you take care of that situation? Because, Your Honor, they did. They did take care of this. This case stems from two ministerial error allegations. And it goes back to the investigation. The investigation is the first time that ASI missed the boat or decided not to avail itself of the remedies that are available under 1581C. So in the investigation, in the preliminary, there was an allegation of ministerial error with respect to the preliminary. Commerce corrected that. But they corrected it prospectively. They didn't change it rectoactively. Why not? I'm sorry. Why not? Right. Why not? Apparently, you should have. I mean, it just seems indefensible to me. I mean, I understand the technicality. They may be out of jurisdiction. Sorry. But why not? Why didn't Commerce go back and fix it? Because, Your Honor, their interpretation of the statute is that it requires a suspension of liquidation on the date of publication. And I would also say this is a brilliant issue. The merits they could have challenged. We could have been here arguing this at the very point under a suit brought under 1581C. They could have, following the investigation, this very issue of prospective versus retroactive refund. We're both asking, why did they even have to challenge? When you've made a mistake, why don't you correct your mistake instead of coming here to the Court of Appeals and defending your mistake on a technicality? Because, Your Honor, there are other things at play, one of which is the timing of review. You do concede, counsel, do you not, that what we're dealing with is a ministerial error to which they are entitled as a matter of simple equity, the benefit of correct behavior by the government. The government concedes its behavior was incorrect. It knows exactly how to correct it. It corrected the rather dramatic differences in these percentages between the ones that were in the preliminary determinations and the ones that were in the adjusted final determination. The government concedes all of this. Why don't you just lie down and say, okay, we'll fix it? What is this case about? If you think you have a sympathetic case up here, you're very mistaken. Now, what is this case really about? I know it's about the fact that you say they should have gone under subsection C, but that's not the issue, is it? Well, that is the issue. No, it's not the issue. The issue is why can't they get the corrected money that they're entitled to? That's the only issue. Because, Your Honor, they should have challenged that. There's a time frame for them to challenge this. Where does the reg say that the corrections are not retrospective? I think their interpretation was based on the statute, which refers to the suspension of liquidation, and that the suspension of liquidation comes into effect at the time of- In other words, there's nothing explicit anywhere where the regulations or your policy has ever said, when we make a mistake, we're only going to correct it prospectively. You did it. Correct. But there's no place where they could suspect that it's your policy to not make them whole in the end. Well, I think, Your Honor, they would suspect that, because that's the general practice that Commerce takes. And I think it's important to note- Where's that practice memorialized in regulation? It's not, Your Honor. But I think in every case, it's important to note that, I think, as Your Honor- Makes your case a little less sympathetic, even, doesn't it? Your Honor, I think it's well known within the industry that, to take example, the preliminary rates versus the final rates. You have the preliminary rates. They may not be as accurate as the final rates. But the final rates, they don't make the rates on the final retroactive in the case of an automatic assessment. And I would note that plaintiff here doesn't challenge the validity of that automatic assessment regulation. And the key thing here is, as far as the effort is- Just clarify what you just said for me. I want to make sure I understand it. So, in the context of the preliminary rates, say the preliminary rate is 12%, and then, ultimately, in the final rate, Commerce says, oh, we should have never charged you 12%. It should have been 10% all along. Preliminary is based on less than full information. They don't get that 2% back? They don't get to file a request with regard to the overpayment and get that back? Is that what you were saying? That is correct. If the final, in the investigation, it's a deposit, it's an estimate rate. And really, what their relief is, that they want to get the most accurate rate possible, their avenue is to go seek an administrative review. And obviously, they didn't do that here, and that there was a rescission of that request. But after the final determination, they can't get the difference back? That's correct, Your Honor. They didn't want an administrative review because they agreed with your final determination. Why would they want to fight your final determination? You went from 19.24 to 11.85, and then you went from 16.7 to 7.87. They don't quarrel with any of that. All they want you to do is apply it to the stuff, to the goods. Your Honor, I think it's very clear that the regulation states, under the automatic assessment regulation, that it's the rates that are applied at the time of entry. All right. As a matter of law, counsel, let me ask you this. If we read consolidated bearings, our case decided in 2003, if we read this as permitting a separate suit under subsection I for orders to the Customs Division, rather than as an administrative rehearing of the original determination, he wins, doesn't he? No, Your Honor, because I think you can categorize almost any challenge to anti-dumping duties as a challenge to liquidation instructions, because liquidation instructions really just apply in the context of investigation or in the context of review. Nobody's challenging the determinations made by Commerce, are they? No, but I'm saying that the liquidation instructions just implement. So to give an example, the scope of the review is determined in the investigation, but it also is in the liquidation instructions. So someone could come along and say, well, I'm suing pursuant to the fee. Well, if he wants to just challenge the liquidation instructions, how does he do that? The challenge to liquidation instructions, the jurisdiction under section I, is limited to situations in which there's an inconsistency between the liquidation instructions and the final results, because liquidation instructions are designed just to implement the final determinations. And as here, the court found that they didn't allege any inconsistency between the final determination. Now they do, ASI alleges in its reply brief for the first time that they are alleging an inconsistency, but that's not in their complaint. It's not what they allege in the complaint. It's not what they allege to the court below. In addition, they can allege an inconsistency, because Commerce, during the investigation, specifically addressed this very issue about retroactivity versus perspective application of the rates. They decided this issue, and essentially what ASI would like is inconsistent results. They would like results that, or instructions that are inconsistent with the final results. They would like it to apply retroactively when Commerce specifically found that the rates are applied prospectively. If Commerce hadn't explicitly found that in the final determination, if they hadn't explicitly said, retroactive, nope, we're not doing it, if you want the difference back, go after it in administrative review, would they have given it back in the administrative review, or are you saying that final determination is Commerce's last word on it? If they had properly filed an administrative review and pursued it, would Commerce have given the money back? Yes, Your Honor. Maybe I was misunderstanding my part. Whatever the rate is determined in the final determination of the investigation, that's the estimate, that's the deposit, that's just the estimate of duties, it becomes the rate as it became here based on the automatic assessment if there was no administrative review determination, but if there is an administrative review determination, you have an entirely different rate, so... What do you mean you have an entirely different rate? Well, you have a new rate that's determined in administrative review. What if the administrative review says, no, the rate is exactly the same, 7.62% is correct, you know, that's the right rate. And Your Honor, to answer your question, you get the money back with interest. So you do get that money back. I thought the statute said that. Right, that's right. You were telling me before it didn't, and I was baffled. I'm sorry, I misunderstood. Yes. But would you have given them back the ministerial error money back in the administrative review as well? It would have been just the new rate, so whatever rate they determined... Okay, no, but between November and January. Would that rate become... It would have gone back, it would have gone back, all the way back. Retroactively. Back to the, I guess the preliminary, with interest. You would not have said, had they raised this in the earlier determination? The investigation? Yes, in the earlier investigation, and they came in and they said, well, wait a minute, it's true that we don't quarrel with what the new number is based on the Commerce's analysis of what's less than fair market value and all the rest of that, but we do question the retroactivity of the number. And Commerce had said, no, we're not going to do it retroactively. And they appealed that in the administrative review process. Are you telling us the government would not have come in and said, oh, that issue is not properly before us because that issue hasn't been actually dealt with in the administrative review? Your Honor, to be clear, what we're talking about here, if you're talking about the investigation, then I think the answer is they could have challenged, and this is our position, is that they could have challenged the final determination and this issue of retroactivity versus prospective application of rates. They didn't. They had 30 days to do it. As far as equities go, it's their sleeping on their rights. They slept on their rights first by not appealing that determination, in which case Commerce was very clear that that rate is going to be prospective, not retroactive. Then the second time they slept on their rights, they didn't request administrative review. They could have gotten the rate that they wanted back to the date of the preliminary. So in either instance, had they appealed within 30 days of the final under C, or had they requested administrative review, you're telling me Commerce would not have contested their entitlement of 7.67, I may not have it exactly right, but I'm close, all the way back to the earliest date? Let's distinguish between the investigation and the investigation. Their position was specifically that the deposit rate would not be made retroactive. Okay, but in the administrative review, it's an entirely different statute, process, regulations. And in that context, the purpose of administrative review is to really determine as most accurately as possible the rate. Isn't that a big distinction in the final determination when the government says we're not going to apply this retroactively? Wasn't the entire focus of that discussion to the deposit rate? And that seems to me to be a reasonable basis for them not to necessarily conclude that that meant they would never get it back, but that you wouldn't adjust the deposit rate, which seems not completely unreasonable to me. But why isn't that a very good argument for why they shouldn't have been on notice from the final determination? Your Honor, we reserved some time for the defendant to intervene. I don't know if that was taken off the time here. I believe I started 15 minutes. Please respond to Judge Moore's question, and we'll handle Mr. Tatum when you're done. I'm sorry, I forgot the question now. Okay. In the final determination, when Commerce responded to the 76 paper that was filed, in that final determination, to the extent that Commerce said we are not going to do this retroactively, they said it only with regard to the deposit rate. Commerce didn't say we're never going to give you this money back. In the final determination, they said we're not going to retroactively correct the deposit rate. Why, then, would that statement be sufficient to put them on notice they have to, at that point, appeal the notion that Commerce has never given this money back? You said you wouldn't do it in the context of the deposit rate in that Federal Register thing. That's the only context in which the request was filed. Why should that put them on notice such that they should have appealed at that point a final determination that Commerce is never giving them the money back, end of story? Because, Your Honor, the automatic assessment regulation, which they don't contest the validity of that regulation, is, as it says, automatic. They haven't described or claimed that there are some regulations and improper interpretation of the statute. And that regulation is clear that if there's no review, administrative review, then the rate is determined as the rate was at the time of entry. And also, Commerce was very clear that the way to address this issue, if you have a problem with the deposit rate, the way to address that is to seek administrative review. Now, I think to make clear, though, it is not a situation where if they're alleging some error with respect to the rate, the deposit rate, they couldn't challenge that in the context of the investigation in 30 days from the conclusion. We've been over that several times. Thank you, Mr. Gilbert. Mr. Taylor, we'll give you two minutes if you could make your point in that time. I will do my best. Thank you, Your Honors. If I may, Judge Moore, one of your questions was in the context of Common 76, and I think it goes to an earlier question. Commerce specifically stated in that context that they're making a legal determination, and that legal determination was that they would not retroactively refund the cash deposit rates, which were simply estimates. They put the world on notice in that statement that you had two options. You could appeal that because of the normal judicial process under Rule C, or you could seek an administrative review. In the administrative review process, the period of investigation looks ahead. It picks a time before the actual entries are being made. The period of review covers the actual period when those reviews are done, so it's an actual assessment based on the actual entries. They decided not to participate in the review, and under the equities of this case, which equities and rights, it's incredibly important for us as petitioners to understand that we knew that parties did not appeal the issue, so they understood through the automatic assessment regulation that in fact their cash deposit rates as paid, as entered, would be liquidated unless their entries were reviewed, and we had that knowledge. You've got a real interest in keeping that rate up high is what you're saying. You don't care if there is a mistake made. We'll just keep that rate right up there as high as we can get it. It's a little hard for you to make that with all the equities in your favor, isn't it? Isn't equities a little bit of a harsh word for you to use? Not at all, Your Honor, because in this case the cash deposit rates are estimates, and they're estimates based looking prospectively, and in fact the first review just ended. They've said that if they'd just requested it at the right time, they would have gotten it all back. Would you have come here and contested that at that point? I'm sorry. Congress has said if they had made the proper request, if they had just done it within their 30-day time limit, they would have gotten it all back. Would you be here then contesting that? Well, I'm not sure that's what he said, Your Honor, as I understood what he said was if they had raised that issue, then they would have the opportunity to make their claim that they should have gotten it all back, and it would become a judicial analysis as to whether they had that opportunity, and if they had, we would have had the opportunity to name them in the administrative review, which we are not. Mr. Taylor, I would be very sympathetic to your position if what was at issue was whether the nominal rate was correctly arrived at as a result of the government's undertaking the traditional studies and going overseas and gathering all the information to determine whether there was merchandise sold in the United States at less than its fair market value to quote from the statute with which we're all familiar. And if that were the issue, I would say, well, you know, they had an obligation to participate to get in there on time. But the issue before us is not a question of what the facts were or whether the proper investigation was conducted.  And when they got their numbers straightened out, everybody agreed it was an oops, and everybody agreed we didn't mean 17.82 or whatever the numbers were. We meant 6.9 or whatever the numbers were. I don't know what you think you would contest at that point. That's what's puzzling me. But the important factor is if they had contested within 30 days, all the parties a year later when they were discerning... But there's nothing to contest. That's the point. It's all an error. It's nothing to contest. This is no debatable argument. There are no facts to be found. There are no rules of law to apply. There's simply a question of adding up your numbers and subtracting a couple of numbers and saying it's an oops. Straighten it out. What are you contesting? I actually would disagree. Good. Well, help me understand. Obviously I don't. The cash deposits are an estimate at the time. And as they reference the fact that Commerce had their position is Commerce has the discretion to go and refund duties. But the case they rely on, the NSK case, which they don't mention, actually in that case when Commerce made that analysis... You want to keep those rates up high even if they're a mistake. That's what you're arguing very vociferously. Petitioners always try and make a point in these arguments. This is one time they should have stayed on their chair and let Commerce try and defend their mistakes. You look a little bit bad up here trying to defend higher rates when they were just mistakes. I'm not trying to defend the higher rates if they in fact were mistakes. What I'm trying to say is that by not addressing the claim in the context of a Rule C case and making the claim immediately so the parties had knowledge whether or not they were going to name parties within the administrative review, we were basing our analysis on whether to name these parties in the administrative review based on the regulations. Your analysis of what? Whether or not we were going to include them or not. And the first review just ended. Okay. Thank you, Mr. Taylor. I think we've got your point. Thank you very much. Mr. Pardo, would you add two minutes to Mr. Pardo's time because we went over with Mr. Taylor. That will give him time for anything he needs to say. Mr. Pardo? Thank you, Your Honor. If I may, Your Honor, with the time left, I wanted to try and redirect the discussion back to the issue at hand here. And the specific issue that we have at hand here is whether this case was appropriately brought under 1581I as opposed to 1581C. As Your Honors, I believe, have acknowledged through today's discussion, 1581C is a jurisdictional venue that is meant for the challenge of the actual determination. And in this case, it is acknowledged by all parties American Signature was not challenging the determination. It was the determination it was happy with. What it was contesting was the efforts by the Department of Commerce to liquidate its entries at rates which it had previously acknowledged were wrong. And the reason why that was coming about was because of its policy not to correct the rates back to the time in which they were originally established. But the regs state pretty clearly, if you've got inaccurate estimates, you file an administrative review. Well, Your Honor, that's the position of the defendant, however, that I would respectfully disagree with that. To begin with, the more important obligation is there is a statutory obligation to correct ministerial errors. The statute specifically says that the agency shall make revisions to correct for ministerial errors. We came to the agency at the time in which we knew, and prior to that time there was no knowledge, that entries were about to be liquidated at rates that all parties acknowledged were incorrect. How could you not know prior to that time what had happened? Your Honor, what was not known prior to that time is that the automatic assessment provision was going to be effective for American citizens. But there was effective dates put on all of those corrections. Effective this date, lower rate. Wouldn't that put you on notice a bit? Again, Your Honor, this issue only becomes germane under the circumstances in which the entries are liquidated subject to the automatic assessment rate. Because as my colleagues have stated, if an administrative review is undertaken, all of these entries would be liquidated as a result of the final result of that administrative review. Now, had that happened, American Signature understands the law and American Signature would have been happy to see the chips fall where they met. But that's not the case that we have before us. The case we have before us is a situation in which the entries were clearly going to be liquidated pursuant to the automatic assessment, and where the Department of Commerce clearly understood that this liquidation was going to result in entries that would be liquidated at an erroneous rate. What's more important is that there is a statutory provision. As we wrote in our request to Commerce, there is a specific statutory provision that provides for the refund of these excess deposits in instances where there's a clerical error. This was a specific request for an administrative process. What we were requesting is that the Department of Commerce, in its authority to administer and enforce the anti-dumping law, take some actions in order to correct what was acknowledged as an error. They failed to do that. As such, our appeal, both to the trial court and here, is pursuant to 1581I. I think we understand. I think we've got it, Mr. Pardo. Thank you very much.